**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| SPEEDWAY MOTORS, INC., | 4:20-CV-3089 |
| Plaintiff, | |
| v. | |
| SHIRA PERLMUTTER, in her official capacity as Register of Copyrights, | |
| Defendant. | |

**BRIEF IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR
SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

I.    RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS.......................2

      A.    Facts Defendant does not dispute. .........................................................................2

      B.    Facts Defendant disputes on the basis that they are argumentative and legal
            arguments. .............................................................................................................2

      C.    Defendant's additional facts. .................................................................................3

II.   STANDARD OF REVIEW ..............................................................................................4

III.  LEGAL BACKGROUND .................................................................................................5

      A.    The Copyright Act provides the statutory basis for the Copyright Office and its
            regulations and practices.......................................................................................5

      B.    Copyright Office regulations provide guidance on the standard for assessing
            creativity. ..............................................................................................................6

      C.    The Copyright Office applies consistent standards for assessing the creativity of
            artwork. ..................................................................................................................9

IV.   FACTUAL BACKGROUND...........................................................................................11

V.    THE COPYRIGHT OFFICE'S DETERMINATION WAS JUSTIFIED ........................15

      A.    Plaintiff must show the Copyright Office's decision was arbitrary, capricious, or
            an abuse of discretion to prevail on its APA claim...............................................17

      B.    The Copyright Office did not abuse its discretion by finding that Plaintiff's
            Works were not sufficiently creative to merit copyright protection. ....................19

            1.    The Office's decision was firmly rooted in established copyright law. ....19

                  a.    The individual elements within the Works are not copyrightable. 20

                        i.    The purple band is not sufficiently creative to be
                              protectable by copyright. ...................................................21

                        ii.   The lettering is not sufficiently creative to be protectable
                              by copyright. .......................................................................23

                  b.    The combination of elements in the Works is not copyrightable. .26

            2.    The Copyright Office applied longstanding copyrightablilty standards
                  and adequately explained its reasoning...................................................29

            3.    While the Office does not compare works, the registrations cited in
                  Plaintiff's Brief demonstrate that the Office applies a consistent legal
                  standard. .................................................................................................32

VI.   PLAINTIFF'S REQUESTED RELIEF IS OUTSIDE THE SCOPE OF THE APA ........35

CONCLUSION....................................................................................................................36

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| SPEEDWAY MOTORS, INC., | 4:20-CV-3089 |
| Plaintiff, | |
| v. | BRIEF IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT; RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| SHIRA PERLMUTTER, in her official capacity as Register of Copyrights, | |
| Defendant. | |

## INTRODUCTION

Defendant, Shira Perlmutter, in her official capacity as Register of Copyrights, pursuant to Fed. R. Civ. P. 56, respectfully requests that the Court grant her Cross Motion for Summary Judgment and dismiss Plaintiff's case with prejudice.

Plaintiff submitted three applications to the Copyright Office, for two-dimensional visual pieces of artwork (the Works), as shown below:

  

Each of the Works is composed of a yellow circle, a purple circular band of varying widths, and stylized lettering. These basic elements, individually and in combination, fail to satisfy the originality requirement to obtain copyright protection.

The Copyright Act and Copyright Office regulations and practices firmly establish that some works lack the quantum of creativity required for copyright protection. *See* 17 U.S.C. § 101 et seq.; 37 C.F.R. § 202. As basic building blocks of visual art, common geometric

1

shapes, lettering, and classic color combinations, like those in the Works, are subject matter that

lack the requisite creativity.  No one person can be given a monopoly on the use of these

building blocks; they must be available for use by the general public.  Similarly, while the Works

may be protectable as logos under trademark law, the combination of basic elements in a layout

that is common for logo designs, with no abstraction of shapes, gradient shading, or color

blocking, is not sufficiently creative to warrant copyright protection.

The Copyright Office applied longstanding legal principles and practices and exercised

its expertise in concluding that the Works were not copyrightable.  The Copyright Office

considered and rejected each of the arguments Plaintiff asserted in its Brief, and repeatedly and

comprehensively explained its reasoning to Plaintiff.  The refusal to register the Works is

supported by the Administrative Record and was sound, reasoned, and firmly based on the

applicable laws.  There are no material issues of fact in dispute, and Defendant is entitled to

summary judgment.

I.      **RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

In response to Plaintiff's Statement of Material Facts, Defendant will respond to each

paragraph as numbered in Plaintiff's Summary Judgment Brief.  (Filing 24 at 4-10).  Even if

accepted as true, Plaintiff's facts do not preclude summary judgment in favor of Defendant.

A.      **Facts Defendant does not dispute.**

For purposes of this motion only, Defendant does not dispute the following paragraphs

from Plaintiff's Statement of Material Facts:  Paragraphs 1-5, 7-8, 16-17, 25-26, and 34.

B.      **Facts Defendant disputes on the basis that they are argumentative and legal arguments.**

Plaintiff's Material Fact No. 6:  Paragraph 6 is argumentative and does not state a fact at

issue in this case.

2

Plaintiff's Material Fact Nos. 9-15:  Paragraphs 9-15 are argumentative and Defendant contends that Paragraphs 9-15 are legal arguments, and not statements of fact.

Plaintiff's Material Fact Nos. 18-24:  Paragraphs 18-24 are argumentative and Defendant contends that Paragraphs 18-24 are legal arguments, and not statements of fact.

Plaintiff's Material Fact Nos. 27-32:  Paragraphs 27-32 are argumentative and Defendant contends that Paragraphs 27-32 are legal arguments, and not statements of fact.

Plaintiff's Material Fact No. 33:  The use of the term "original" in Paragraph 33 is argumentative.  Defendant does not dispute that each of the three Works was independently created by the author.

C.     Defendant's additional facts.

Defendant's Material Fact No. 1:  Plaintiff submitted applications to the Copyright Office to register the Works as two-dimensional visual pieces of artwork.  (Filing 21-2 at US0000001-3; Filing 21-10 at US0000086-88; Filing 21-18 at US0000178-80).

Defendant's Material Fact No. 2:  Plaintiff's Works are graphic images of logos which share the common feature of a yellow circle accented with a stylized purple band.  (Filing 21-3 at US0000004; Filing 21-11 at US0000089; Filing 21-19 at US0000181).

Defendant's Material Fact No. 3:  The Copyright Office found that the Works did not support a claim to copyright because "copyright does not protect familiar symbols or designs; basic geometric shapes; words and short phrases such as names, titles, and slogans; or mere variations of typographic ornamentation, lettering or coloring."  (Filing 21-5 at US0000008; Filing 21-13 at US0000092; Filing 21-21 at US0000184).

Defendant's Material Fact No. 4:  The Copyright Office denied Plaintiff's first request for reconsideration, affirming that the Works do "not contain a sufficient amount of creativity to

warrant registration."  ([Filing 21-7 at US0000036](); [Filing 21-15 at US0000121](); [Filing 21-23 at US0000214]()).

Defendant's Material Fact No. 5:  The Copyright Office's Review Board (the Board) considered each of Plaintiff's arguments in its second request for reconsideration, and concluded that the Works lacked sufficient creative authorship to support a claim to copyright under the relevant legal and administrative standards.  ([Filing 21-9 at US0000079-85](); [Filing 21-17 at US0000171-77](); [Filing 21-25 at US0000257-63]()).

Defendant's Material Fact No. 6:  In its response letters, the Board described each of the Works for which Plaintiff sought protection, outlined the applicable statutory and administrative considerations, and then analyzed the Works in light of these standards and the arguments raised by Plaintiff.  ([Filing 21-9 at US0000079-85](); [Filing 21-17 at US0000171-77](); [Filing 21-25 at US0000257-63]()).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Fed. R. Civ. P. 56(a)](). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *[Celotex Corp. v. Catrett](), 477 U.S. 317, 330 (1986)* (J. Brennan, dissenting).  This burden consists of two components:  "An initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *[Id.]()*  Review under the Administrative Procedure Act (APA) is limited to a consideration of the administrative record.  [5 U.S.C. § 706]().  And, in the context of an APA challenge to the denial of a copyright registration, the standard of review is

4

whether the denial was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.*

III.   **LEGAL BACKGROUND**

A.   **The Copyright Act provides the statutory basis for the Copyright Office and its regulations and practices.**

The Copyright Act of 1976, 17 U.S.C. § 101 et seq., grants copyright protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Copyright protection confers certain exclusive rights, including the rights to copy and distribute the work. *Id.* § 106. The Copyright Act defines categories of works of authorship in which copyright protection can subsist, including "pictorial, graphic, and sculptural works," *id.* § 102(a), which include "two-labaddimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings." *Id.* § 101. Such protection for pictorial, graphic, and sculptural works does not extend to the design of typographical elements, as Congress has consistently "refused to grant" copyright protection to typeface. *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978); H.R. REP. NO. 94-1476, at 55 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5668-69 ("The Committee does not regard the design of typeface, as thus defined, to be a copyrightable 'pictorial, graphic, or sculptural work' within the meaning of this bill . . . .").

Although registration with the Copyright Office is not a prerequisite to copyright protection, it brings certain legal benefits, including an entitlement to attorneys' fees and statutory damages, and a presumption of validity for enforcement efforts, if registration is timely made. *See* 17 U.S.C. §§ 410(c), 412. In addition, registration (or the refusal of an application for registration) is a prerequisite to filing suit. *Id.* § 411(a).

The Office will only register a work, however, if it determines that the work "constitutes copyrightable subject matter," and that "the other legal and formal requirements [of the Copyright Act] have been met." *Id.* § 410(a).  A key part of the Office's assessment is determining whether the work is sufficiently "original," *i.e.*, that it was independently created by the author and is sufficiently creative.  *Id.* § 102(a); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–46 (1991).  Indeed, the Supreme Court has stressed that "as a constitutional matter, copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Feist*, 499 U.S. at 363 (emphasis in original).

Each year, the Office receives over half a million applications for copyright registration. The Office ultimately declines to register some 20,000 or more of these claims annually for various reasons, including when the examination process shows that the submitted work does not meet the standards for protection under the Copyright Act.  *See, e.g.,* U.S. COPYRIGHT OFFICE, UNITED STATES COPYRIGHT OFFICE FISCAL 2019 ANNUAL REPORT 37 (2020), https://www.copyright.gov/reports/annual/2019/ar2019.pdf (rejecting approximately 20,000 out of over 516,000 claims); U.S. COPYRIGHT OFFICE, UNITED STATES COPYRIGHT OFFICE FISCAL 2018 ANNUAL REPORT 6 (2019), https://copyright.gov/reports/annual/2018/ar2018.pdf (rejecting approximately 25,000 out of 520,000 claims).

**B.      Copyright Office regulations provide guidance on the standard for assessing creativity**.

The Office has well-established regulations and procedures for reviewing copyright applications, including with regard to identifying what subject matter is copyrightable.  *See* 17 U.S.C. § 702; *see also* 37 C.F.R. §§ 202.1, 202.3, 202.10.  Copyright Office regulations implement the originality requirement set forth in the Copyright Act and detailed in the *Feist* decision.  For example, "[s]ince at least 1899, it has been the practice of the Copyright Office to

6

deny registration to 'words and phrases'" because they lack the *de minimis* creative expression required to be protected by copyright. *Southco, Inc. v. Kanebridge Corp.,* 390 F.3d 276, 285–87 (3d Cir. 2004). A 1958 circular explained this limitation in the context of differentiating copyrightability from other tools of brand protection for logos, such as trademark law:

> To be entitled to copyright protection, a work must contain something capable of being copyrighted—that is, an appreciable amount of original text or pictorial material . . . . Brand names, trade names, slogans, and *other short phrases or expressions cannot be copyrighted,* even if they are distinctively arranged or printed.

*Id.* at 285 (citing U.S. COPYRIGHT OFFICE, CIRCULAR 46: COPYRIGHT IN COMMERCIAL PRINTS AND LABELS (1958) (emphasis added)). That circular suggested that "protection for short phrases used in connection with commercial products is more appropriately addressed under federal trademark law and laws relating to unfair competition." *Southco, Inc.,* 390 F.3d at 285.

In 1959, the Copyright Office codified its practices in regulations, which remain operative in relevant part today. *See* 24 Fed. Reg. 4,955 (June 18, 1959). Specifically, § 202.1 of the Office's regulations bars the registration of "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering or coloring." 37 C.F.R. § 202.1(a). Similarly, § 202.10(a) states that "to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form." *Id.* § 202.10(a). Here, too, the Office's rule distinguishes between the *de minimis* showing of creativity required for copyright protection and those elements which may be otherwise protected under trademark law:

> (b) A claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter and lacking copyrightable matter. While the Copyright Office will not investigate whether the matter has been or can be registered at the Patent and Trademark Office, it will register a properly filed copyright claim in a print or label that contains the requisite qualifications for copyright even though there is a trademark on it. However, registration of a claim

7

to copyright does not give the claimant rights available by trademark registrations at the Patent and Trademark Office.

*Id.* § 202.10(a)–(b).  The espoused intentions of the author, the design's uniqueness, visual effect or symbolism, the time and effort it took to create the design, or the commercial success of the design in the marketplace, and its effect on the observer are all irrelevant to determining whether a design is copyrightable.  *See, e.g., Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903); *see also* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT PRACTICES § 310 (3d. ed. 2017) ("COMPENDIUM (THIRD)")[1] ("Factors that will not be considered in the examination of originality").

These long-standing regulations have been validated multiple times by various circuits as "a fair summary of the law," including in the context of business logos.  *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544 (2d Cir. 1959); *Accord, e.g., Alberto–Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (short phrase "most personal sort of deodorant" and typography on packaging for feminine deodorant spray not copyrightable); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519–20 (1st Cir. 1996) (short phrases used in radio contest brochure not copyrightable).  In particular, the Eighth Circuit has relied upon the Copyright Office regulation regarding pictorial or graphic works in concluding that the Office properly refused registration of a simple logo design.  *See John Muller & Co. v. N.Y. Arrows Soccer Team, Inc.*, 802 F.2d 989, 990 (8th Cir. 1986) (citing 37 C.F.R. § 202.10(a)). In doing so, it noted that "there is no simple way to draw the line between 'some creative authorship' and not enough creative authorship, and there are no cases involving 'works' exactly alike."  *Id.*  This Circuit has also followed Copyright Office regulations prohibiting the

---

[1]  The Office released a new version of the COMPENDIUM (THIRD) in January 2021, but the 2017 version is the applicable version here because it was in effect at the time the applications were submitted.

registration of "fragmentary words and phrases." *Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 626, 635 (8th Cir. 1989) (discussing 37 C.F.R. § 202.1(a)).  And this district has relied upon Copyright Office regulations in determining whether creative embellishments display the requisite modicum of creativity.  Noting that "mere variations in color or medium are generally not eligible for copyright protection," the Court found the addition of beading, and glitter to an ornament to be *de minimis* contributions ineligible for copyright protection.  *Cody Foster & Co. v. Urban Outfitters, Inc.*, No. 8:14-CV-80, 2015 WL 12698385, at *5 (D. Neb. Sept. 25, 2015) (citing 37 C.F.R. § 202.10(a)); *see also Magic Mktg., Inc v. Mailing Servs. of Pittsburgh, Inc.,* 634 F. Supp. 769 (W.D. Pa. 1986) (finding striped envelopes with simple phrases not copyrightable); *Perma Greetings, Inc. v. Russ Berrie & Co.*, 598 F. Supp. 445, 448 (E.D. Mo. 1984) (finding decorative coaster designs with simple phrases not copyrightable).

C.     **The Copyright Office applies consistent standards for assessing the creativity of artwork.**

In addition to its regulations and public information circulars outlining its registration practices, the Office publishes an administrative manual, the *Compendium of U.S. Copyright Office Practices (Third Edition) ("Compendium")*, which is typically adopted following a period for public notice and comment.  *See* 37 C.F.R. § 202.1; COMPENDIUM (THIRD).  The *Compendium* sets forth Office interpretations of copyright law and provides standards for examining and registering works.

The *Compendium* contains several sections outlining basic design elements that are not protectable by copyright.  The *Compendium* specifies that the Copyright Act does not protect common geometric shapes, including "straight or curved lines, circles, ovals, spheres, triangles, cones, squares, cubes, rectangles, diamonds, trapezoids, parallelograms, pentagons, hexagons,

9

heptagons, octagons, and decagons."  COMPENDIUM (THIRD) § 906.1.  Likewise, the

*Compendium* provides that typefont, lettering and typographic ornamentation, no matter how

novel or creative, are not generally registrable because they are "mere variations of

uncopyrightable letters or words, which in turn are the building blocks of expression."  *Id.*

§ 906.4.  Similarly, "[m]erely adding or changing one or relatively few colors in a work, or

combining expected or familiar pairs or sets of colors is not copyrightable . . . even if the

coloration makes a work more aesthetically pleasing or commercially valuable."  *Id.* § 906.3.

Strong legal and policy considerations support the prohibition on copyrightability of

basic elements such as geometric shapes, lines, lettering, and colors.  Copyright must strike a

"balance of competing claims upon the public interest" by encouraging and rewarding creativity

while also promoting the "broad public availability of literature, music, and the other arts."

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).  Granting copyright

protection for basic building blocks of visual arts would impermissibly allow one individual to

use those basic elements in their art and prevent others from copying them in their own creative

works.  *See, e.g., Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) (recognizing that single

musical note is not protected by copyright); *Scentsy, Inc. v. B.R. Chase, LLC*, 942 F. Supp. 2d

1045, 1053 (D. Idaho 2013) ("the basic tools of creativity, like simple shapes and colors, cannot

be copyrighted, but are free for all to use"); *Title Design Collection Inc. v. Ross Stores Inc.,* No.

13-8899 GAF, 2014 WL 12773909, at *3 (C.D. Cal. June 6, 2014) (noting that plaintiff "does

not and cannot own a copyright in the design's colors or geometric elements themselves"); U.S.

COPYRIGHT OFFICE, CIRCULAR 33: WORKS NOT PROTECTED BY COPYRIGHT 3 (2017),

https://www.copyright.gov/circs/circ33.pdf (as "building blocks of expression that are used to

create works of authorship," typeface, fonts and lettering must be available for everyone to use).

10

Individual shapes, lines, letters, colors, words, short phrases, musical notes and chords, and other basic creative elements should be available for broad public use and enjoyment.  *See id.*

IV.    **FACTUAL BACKGROUND**

Plaintiff submitted applications to the Copyright Office to register the Works as two-dimensional visual pieces of artwork.  (Filing 21-2 at US0000001-3; Filing 21-10 at US0000086-88; Filing 21-18 at US0000178-80).  As shown above, the Works are graphic images of logos which share the common feature of a yellow circle accented with a stylized purple band.  (Filing 21-3 at US0000004; Filing 21-11 at US0000089; Filing 21-19 at US0000181).  The upper right-hand portion of the purple band is thin, and it gradually becomes thicker as it moves clockwise around the band.  *See id.*  There is a small break in the band on the left-hand side of each of the Works.  *See id.*  The differences between the three Works lie in simple phrasing or lettering included within the yellow circle.  *See id.*  The work entitled "S Logo" features a purple "S" in the center of the circle.  (Filing 21-3 at US0000004).  The work entitled "SPEEDWAY MOTORS LOGO" includes the phrase "SPEEDWAY MOTORS" positioned to the left and within the circle, with the purple border necessarily broken by the length of the word "SPEEDWAY."  (Filing 21-11 at US0000089).  And the work entitled "TEAM SPEEDWAY MOTORS Logo" is identical to the "SPEEDWAY MOTORS LOGO" but for the addition of the word "TEAM" over the letters "SPEE" in the word "SPEEDWAY."[2]  (Filing 21-19 at US0000181).

Shortly upon receipt, the Office examined the Works for two-dimensional artwork authorship and issued its first formal rejections of Plaintiff's applications.  (Filing 21-5 at

---

[2] Plaintiff's applications to register the Works did not indicate that any of the Works were derivative works, so the Office evaluated the Works independently.  (Filing 21-2 at US0000001-3; Filing 21-10 at US0000086-88; Filing 21-18 at US0000178-80).

US0000008-10; Filing 21-13 at US0000092-94; Filing 21-21 at US0000184-86).  Specifically,

the Office stated that the Works did not support a claim to copyright because:

> Copyright does not protect familiar symbols or designs; basic geometric shapes;
> words and short phrases such as names, titles, and slogans; or mere variations of
> typographic ornamentation, lettering or coloring. *See* 37 C.F.R. §202.1. Neither
> the aesthetic appeal or [sic] commercial value of a work, nor the amount of time
> and effort expended to create a work are factors that are considered under the
> copyright law. *See Bleistein v. Donaldson*, 188 U.S. 239 (1903); *Feist
> Publications v. Rural Telephone Service Co.*, 499 U.S. 340 (1991). The question
> is whether there is sufficient creative authorship within the meaning of the
> copyright statute and settled case law.

(Filing 21-5 at US0000008; Filing 21-13 at US0000092; Filing 21-21 at US0000184).

Plaintiff submitted a first request for reconsideration of the Office's refusal to register the

Works, arguing that the Copyright Office failed to explain how the Works were composed of

familiar symbols or designs or basic geometric shapes.  (Filing 21-6 at US0000011-35; Filing

21-14 at US0000095-120; Filing 21-22 at US0000187-213).  Plaintiff argued that a well-known

design firm made a number of artistic decisions when creating the Works, including selecting the

precise colors, designing the purple band to evoke "many curved and circular shapes involved in

racing," and configuring the lettering artistically.  (Filing 21-6 at US0000016-18; Filing 21-14 at

US0000099-102; Filing 21-22 at US0000191-95).

The Office denied Plaintiff's first request for reconsideration, affirming that the Works

do "not contain a sufficient amount of creativity to warrant registration."  (Filing 21-7 at

US0000036; Filing 21-15 at US0000121; Filing 21-23 at US0000214).[3]  The Office noted that

"[e]xaminers are not required to describe in detail the analytical process used in determining not

to register a work," and provided a more extensive explanation of its reasoning.  (Filing 21-7 at

US0000038; Filing 21-15 at US0000123; Filing 21-23 at US0000216).  In doing so, it analyzed

---

[3] As Plaintiff sought reconsideration for each of the three Works, the Office responded
with three similar letters detailing the bases for refusal.

the individual elements as well as the work as a whole to determine whether it contained

sufficient creative authorship.  (Filing 21-7 at US0000037; Filing 21-15 at US0000122; Filing

21-23 at US0000215).  The Office explained that common geometric shapes, patterns, symbols

or designs — and minor alterations thereto — are insufficiently creative to be protectable by

copyright.  (Filing 21-7 at US0000038; Filing 21-15 at US0000123; Filing 21-23 at US0000216).

Neither the individual elements in the Works nor the combination of the elements showed the

requisite level of creativity to support a copyright claim.  *Id.*  Instead, the centering of slightly

stylized text within a geometric shape amounted to "an age-old, common logo configuration."

*Id.*

Plaintiff then submitted a second request for reconsideration of the Office's refusal to

register the Works.  (Filing 21-8 at US0000041-78; Filing 21-16 at US0000126-70; Filing 21-24

at US0000219-56).  Plaintiff argued that the Office failed to appreciate the significance of the

design elements of the Works to a performance vehicle customer, such as the tapered and

notched purple line designed to show "an appearance of a rolling motion and acceleration,

symbolic of speed, racing and the performance car industry."  (Filing 21-8 at US0000049; Filing

21-16 at US0000135; Filing 21-24 at US0000227).  Plaintiff explained that it had engaged a

well-known design firm to create the Works, which made many choices about how to arrange the

elements to convey a message that would be appealing to potential consumers.  (Filing 21-8 at

US0000047-48; Filing 21-16 at US0000132-33; Filing 21-24 at US0000224-25).  In Plaintiff's

view, the tapered and notched purple line, the stylized text, and the color selection each

demonstrated creativity, and the combination of all these elements constituted more than a

conventional arrangement of shapes and text, such that the Works satisfied the minimal creativity

requirement.  (Filing 21-8 at US0000048-55; Filing 21-16 at US0000134-42; Filing 21-24 at

13

US0000225-34).  Plaintiff also argued that the Works were comparable to several logos the

Office had registered recently.  (Filing 21-8 at US0000046-47; Filing 21-16 at US0000131-32;

Filing 21-24 at US0000223-24).

       The Board considered each of Plaintiff's arguments, but concluded that the Works lacked

sufficient creative authorship to support a claim to copyright under the relevant legal and

administrative principles.  (Filing 21-9 at US0000079-85; Filing 21-17 at US0000171-77; Filing

21-25 at US0000257-63).[4]  In its response, the Board described each of the Works for which

Plaintiff sought protection, outlined the applicable statutory and administrative considerations,

and then analyzed the Works in light of these standards and the arguments raised by Plaintiff.  *Id.*

As required by law, the Board focused on the appearance of the Works, not the espoused

intentions of the author, any symbolism in the Works, or the time and effort it took to create the

Works.  (Filing 21-9 at US0000082-83 (citing *Bleistein*, 188 U.S. at 251)).  First, the Board

noted that the individual elements composing the Works—circles, a single letter, and short

phrases—are not copyrightable under 37 C.F.R. § 202.1(a).  (Filing 21-9 at US0000083-84).  It

also addressed Plaintiff's contention that the stylized purple band and color selection lifted the

Works out of the garden-variety stylization that belongs to the public domain, pointing to Office

prohibitions on protecting mere coloration or familiar pairing of color sets like yellow and

purple.  *Id.*[5]  The Board concluded that, viewed as a whole, the selection, coordination, and

arrangement of the shapes, colors, words, and letters did not merit copyright protection because

"only two solid colors are used, and there is no shading or gradient use of the colors," and each

---

    [4] The Board issued a combined letter that addressed all three of the Works.  The same
letter was included in the Administrative Record for each of the Works.  For the sake of brevity,
Defendant will cite Filing 21-9 at US0000079-85 when referring to the combined letter.

    [5] The Office pointed to third party color theory publications demonstrating that the
complementary colors of yellow and purple were frequently paired together.  *Id.*

work is "essentially a circle band within a larger circle that follows the outline of the larger circle." (Filing 21-9 at US0000084). Drawing upon the Supreme Court's holding in *Feist,* similar business logos refused protection by courts, and the Office's own regulations, the Board concluded that placing a single letter or business name on top of what is essentially a common geometric shape results in a "garden-variety" logo configuration that is not entitled to copyright protection. *Id.* Finally, the Board rejected Plaintiff's suggestion that this refusal would be inconsistent with past registration for other logos, noting that "the Office does not compare works" in accordance with the *Compendium,* and concluding in any event that the other logos cited by Plaintiff exhibited significantly more creativity than the Works. (Filing 21-9 at US0000085).

Plaintiff filed this lawsuit under the APA, alleging that the Office's refusal to register the Works "can only fairly be characterized as arbitrary and capricious, an abuse of discretion, or not in accordance with law." (Filing 1 ¶ 30). Pursuant to the APA, the parties agree that the Court's review of this case is limited to the Administrative Record, (Filing 19 at 4), therefore summary judgment is appropriate.

## V.    THE COPYRIGHT OFFICE'S DETERMINATION WAS JUSTIFIED

In the context of an APA challenge to the denial of a copyright registration, the relevant inquiry is whether the denial was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706. The Office's refusal to register Plaintiff's Works as pictorial or graphic works was neither arbitrary, capricious, nor an abuse of discretion. Rather, the Office applied longstanding legal criteria in assessing the creativity of the Works, and explained clearly how it applied those criteria to each element and the combination of elements within the Works. (Filing 21-5 at US0000008; Filing 21-7 at US0000036; Filing 21-9 at

15

US0000079).  In particular, the letter issued by the Board provided a satisfactory explanation and rational basis for the decision to refuse registration of the Works as pictorial or graphic works. (Filing 21-9 at US0000079-85).  Plaintiff's disagreement with the Office's conclusion does not establish an abuse of discretion, nor does it indicate that the Office acted arbitrarily or capriciously.  *See Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1010 (8th Cir. 2018) (noting that a plaintiff's "disagreement is no basis for finding" a federal agency's interpretation to be "arbitrary and capricious").

The Court should give substantial deference to the Office's judgment regarding copyrightability in recognition of the Office's extensive expertise in assessing whether works constitute copyrightable subject matter.  *See Friends of the Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1128 (8th Cir. 1999) (noting that "when the . . . analysis of the relevant information requires a high level of technical expertise, [courts] must defer to the informed discretion of the responsible federal agencies.") (citation omitted); *see also Southco, Inc.*, 390 F.3d at 286 & n.5 (en banc) (Alito, J.) (finding the Copyright Office's longstanding application of creativity standards to "merit[] deference" since such practices "reflect[] a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (citation omitted); *Esquire, Inc. v. Ringer*, 591 F.2d 796, 801–02 (D.C. Cir. 1978) (giving "considerable weight" to Register's refusal determination); *Custom Chrome, Inc. v. Ringer*, No. Civ. A. 93-2634(GK), 1995 WL 405690, at *4 (D.D.C. June 30, 1995) (according "great weight" to Register's registration decision).  The Office's determination that Plaintiff's Works lacked the requisite creativity necessary for copyright protection was correct.

16

### A.   Plaintiff must show the Copyright Office's decision was arbitrary, capricious, or an abuse of discretion to prevail on its APA claim.

The Board's decision to uphold a refusal to register a work constitutes a "final agency action" with respect to the issues addressed therein, 37 C.F.R. § 202.5(g), and is subject to review by a federal district court under the APA.  *See* 17 U.S.C. § 701(e) ("[A]ctions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act . . . ."); *see also* 5 U.S.C. § 704 ("Agency action made reviewable by statute . . . [is] subject to judicial review.").  In setting the scope of judicial review, the APA provides that courts may "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 706.  The Supreme Court has held that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  A "satisfactory explanation" is one from which "the agency's [decision] path may reasonably be discerned," and does not require express or detailed analysis of every argument raised.  *Id.*  Plaintiff bears the burden of proving the agency's action was arbitrary and capricious.  *See United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004).

This Circuit applies an abuse of discretion standard when reviewing copyright registration refusals.  *See John Muller & Co.*, 802 F.2d at 990.  In conducting this type of "narrow" review, this Circuit also mandates that courts "give 'agency decisions a high degree of deference.'"  *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004) (citing *Sierra Club v. Envtl. Prot. Agency*, 252 F.3d 943, 947 (8th Cir. 2001)); *see also Friends of the Boundary Waters Wilderness*, 164 F.3d at 1121 ("[W]hen reviewing agency action, we accord

17

substantial deference to the agency's interpretation of the statutes and regulations it administers.") (citation omitted).  "If an agency's determination is supportable on *any* rational basis," the court "must uphold it."  *Voyageurs Nat'l Park Ass'n*, 381 F.3d at 763.  And the court does "not substitute [its] judgment for that of the agency even if the evidence would have also supported the opposite conclusion."  *South Dakota v. United States DOI*, 423 F.3d 790, 799 (8th Cir. 2005); *see also Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43; *Cent. S.D. Coop. Grazing Dist. v. Sec'y of the United States Dep't. of Agric.*, 266 F.3d 889, 895 (8th Cir. 2001) (noting that "the scope of our review is narrow and we are not to substitute our judgment for that of the agency."); *Harwood v. Apfel*, 186 F.3d 1039, 1042 (8th Cir. 1999) (noting that the task is not to "reweigh the evidence").  Rather, in recognition of the Office's "considerable expertise" concerning the determination of creativity, courts must give "considerable weight" to the Register's interpretation of its regulations, particularly with regard to its regulations that "attempt[] to define the boundaries between copyrightable . . . and noncopyrightable" works. *Esquire*, 591 F.2d at 801–02 (finding such deference appropriate because the "interpretation relates to a matter within the field of administrative expertise and has been consistently followed for a significant period of time"); *see Norris Indus. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (finding no error in district court's reliance on Register's registration decision because "[t]hese determinations are routinely made by the Register and are unquestionably related to the substantive area of the agency's business"); *Homer Laughlin China Co. v. Oman,* No. CIV. A. 90-3160, 1991 WL 154540, at *1–2 (D.D.C. July 30, 1991) ("The Register is entitled to a significant degree of deference and its decision may be overturned only upon an abuse of discretion"); *see also Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in

18

order."); *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 480 (6th Cir. 2015) (holding

that district court erred in failing to give appropriate deference to Copyright Office's registration

determinations).  Absent an abuse of discretion, the Court must not set aside the Register's

refusal to register a work.  *See, e.g.*, *John Muller & Co.*, 802 F.2d at 990 (upholding Office's

refusal to register a logo).  As long as the Copyright Office has offered a reasonable construction

of the copyright statute and regulations, its judgment must be affirmed.  *See, e.g.*, *Harrod v.*

*Glickman*, 206 F.3d 783, 788 (8th Cir. 2000) (holding that agency did not act arbitrarily where its

determination was a "reasonable interpretation of the regulation and the statute").

      **B.**    **The Copyright Office did not abuse its discretion by finding that Plaintiff's Works were not sufficiently creative to merit copyright protection.**

           **1.**    **The Office's decision was firmly rooted in established copyright law**.

The Office's determination that the Plaintiff's Works lacked sufficient creative

authorship to warrant registration was correct and supported by law, therefore it cannot be an

abuse of discretion and should stand.  The Office's longstanding practice is to refuse registration

to works consisting entirely of "mere variations of typographic ornamentation, lettering or

coloring," and "familiar symbols or designs" because they lack sufficient creativity to merit

copyright protection.  37 C.F.R. § 202.1(a).  In this case, the Office reasonably concluded that

the Works, each consisting of simple combinations of two geometric circles and the letter S, or a

variation of the words TEAM SPEEDWAY MOTORS, in purple and yellow coloring, lacked

sufficient creativity to merit copyright protection.  (*See* Filing 21-9 at US0000079-85).

Moreover, the Office specified why the Works failed to meet the standard of creativity set forth

in the Copyright Act and described in case law.  *See id.*

Plaintiff generally concedes the correctness of the legal standards for copyrightability

outlined in the Board's refusal to register the Works, even acknowledging that "the Refusal

recites" the principles of case law that Plaintiff views as most helpful to its position. ([Filing 24 at 22](Filing 24 at 22)). The crux of the dispute, then, is Plaintiff's desire that the Office would have reached a different conclusion when applying these settled legal principles to its Works. This disagreement does not demonstrate abuse of discretion by the Office, which even-handedly applied its decades-long registration practices in evaluating whether these business logos could be registered under copyright law. The Office's time-tested application of copyright law ensures that basic shapes, colors, and phrases remain in the public domain for all to use, while permitting it to register logos that contain the requisite creativity. *See Feist*, 499 U.S. at 362 ("The standard of originality is low, but it does exist."). The Court should reject Plaintiff's invitation to second-guess the Office's reasoned and principled determination.

### a. The individual elements within the Works are not copyrightable.

A work must be "original" to be copyrightable, which means the work must have been "independently created by the author (as opposed to copied from other works)," and it must "possess[ ] at least some minimal degree of creativity." 17 U.S.C. § 102(a); *see also Feist*, 499 U.S. at 345. While the threshold level of creativity is low, the Supreme Court has recognized that "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359 (finding that that there can be no copyright in a work in which "the creative spark is utterly lacking or so trivial as to be virtually nonexistent."). As implemented by Copyright Office regulations, exemplary categories of works include "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; [and] mere variations of typographic ornamentation, lettering, or coloring." 37 C.F.R. § 202.1(a). Similarly, § 202.10(a) states that "to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form." *Id.*

§ 202.10(a).  The *Compendium* also specifies that common geometric shapes, typefont, lettering, and the combination of familiar color pairs are not copyrightable authorship.  COMPENDIUM (THIRD) §§ 906.1, 906.3, 906.4.  When viewed in light of these legal and administrative standards, the Works do not contain the necessary creativity for copyright protection.

### i.    The purple band is not sufficiently creative to be protectable by copyright.

A centerpiece of Plaintiff's position is that the Office erred in concluding the Works' shared stylized circle element was not creative.  (Filing 24 at 13-14).  The Office did not err, much less act arbitrarily or capriciously, in characterizing the purple band in the Works as a variation of a circle.  The Board's letter described the purple line as a stylized band of differing thicknesses with a small break on the left.  (Filing 21-9 at US0000079).  It also noted that Plaintiff emphasized in its request for reconsideration the "line weights, gap, and notch" in the band.  *Id.* at US0000083.  Thus, the Board acknowledged the features of the design element that Plaintiff argues are creative, but still perceived the purple line as a broken circle.  *See id.*

This determination by the Board is well grounded in precedent.  In *Coach, Inc. v. Peters*, the court upheld the Office's refusal to register the below design because it perceived the design as consisting of a series of letter "C" shapes.  *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495 (S.D.N.Y. 2005).  The court rejected the plaintiffs' contention that the elements did not comprise any basic geometric shapes, lettering or typography, stating "they cannot seriously maintain that defendant acted arbitrarily and capriciously in interpreting these 'elements' as the letter 'C.'"  *Id.* at 498.



Similarly, here, the Office did not act arbitrarily and capriciously in finding that the purple line was a broken circle.  Though Plaintiff characterizes the band as "line art," it admits that the band was created to depict "the many curved and circular shapes involved in racing such as gauges, steering wheels, vehicle wheels, headlamps, racetracks, etc."  (Filing 24 at 5 (citing Filing 21-16 at US0000145)).  Thus, it was reasonable for the Office to conclude that the line reflected minor adjustments to a basic circle shape.  (See Filing 21-9 at US0000083-84).  As a variation on a basic shape, the purple band is not protectable by copyright.  See 37 C.F.R. § 202.1(a); COMPENDIUM (THIRD) § 906.1.

Plaintiff's reliance on the intended effect the design of the purple band will have on potential consumers as evidence of copyrightable creativity reveals a misunderstanding of a basic principle of copyright law.  (Filing 24 at 14 (arguing that purple band gives "a 3D impression with an appearance of a rolling motion and acceleration" and contains "intentionally artistic aspects to define how the Speedway Motors Logo Work is perceived"); Filing 24 at 15 (arguing that placement and shape of the letters convey a "blurred impression indicating speed"); Filing 24 at 16 (arguing that placement of yellow circle was designed to "convey a sense of acceleration and forward motion")).  When determining if a work is sufficiently creative, the Office considers the "expression that is fixed in the work itself," and does "not consider any meaning or significance that the work may evoke."  COMPENDIUM (THIRD) § 310.3; see Star Athletica LLC v. Varsity Brands, Inc., 137 S. Ct. 1002, 1015 (2017) (inquiry is limited to how a work is perceived, not how or why it was designed).  Trademark law, not copyright law, takes into account potential consumers' interpretations of a logo and whether they associate the logo with the source of

certain goods and/or services.[6]  *See Frosty Treats Inc. v. Sony Comput. Entm't Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir 2005).  Likewise, the Office passes no judgment on the quality of the work or whether it will be commercially useful.  *See Bleistein*, 188 U.S. at 239.  The Office also does not consider the effort and skills of the author when determining if a work is sufficiently creative.  The Supreme Court rejected the "sweat of the brow" doctrine noting that "[w]ithout a doubt, the 'sweat of the brow' doctrine flouted basic copyright principles," and "the 1976 revisions to the Copyright Act leave no doubt that originality, *not* 'sweat of the brow,' is the touchstone of copyright protection . . . ."  *Feist*, 499 U.S. at 354, 359-60 (emphasis added); *see also Homer Laughlin China Co.*, 1991 WL 154540 at *3 (rejecting contention that expense, human effort, professional skills, and expertise of designer should be considered in determining whether work was creative).  Thus, the hiring of a marketing firm to create the Works, the intention for the notch and tapering in the band to provide "a 3D impression with an appearance of a rolling motion and acceleration," and the inclusion of "artistic aspects" within the band to affect how consumers will perceive the Works, (Filing 24 at 14), are simply irrelevant to the creativity determination.  What matters is the actual expression submitted in the deposit, which the Office reasonably concluded was a variation on a circle.

ii.    **The lettering is not sufficiently creative to be protectable by copyright.**

Nor does the lettering in the Works warrant copyright protection.  Since the Copyright Act of 1909, "typeface has never been considered entitled to copyright."  *Eltra Corp.*, 579 F.2d at 298 (affirming the Office's decision to refuse registration of a typeface design under the 1909 Act).  When passing the 1976 Copyright Act, Congress considered protecting the design of

---

[6] Based on the trademark registration symbol included in the images of the Works, it appears Plaintiff has registered each of the Works as a trademark with the U.S. Patent and Trademark Office.

typefaces but ultimately did not "regard the design of typeface, as thus defined, to be a copyrightable 'pictorial, graphic, or sculptural work.'" H.R. REP. NO. 94-1476, at 55 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668.  Although many parties have consistently asked "Congress to amend the law in order to provide copyright protection to typeface," "[j]ust as consistently, Congress has refused to grant the protection." *Eltra Corp.*, 579 F.2d at 298. Registering typeface and fonts, no matter how novel or creative they might be, would contravene Congress's policy decision.  *See id.* at 298 n.11 (citing H.R. REP. NO. 94-1476, at 55); *see also id.* ("What Congress has refused to authorize for registration, Courts cannot authorize or require.").

Plaintiff ignores this prohibition on copyright protection of typeface and argues, as it did in its Second Request for Reconsideration, that the Works do not use a "standard font" and that the "kerning space between letters is not equal."  (Filing 24 at 5-7, 9, 15, 19; *see also* Filing 21-16 at US0000136-37; Filing 21-24 at US0000228-29).  The Board considered and rejected this argument, clearly explaining in its letter that "typeface, typefont, lettering, calligraphy, and typographical ornamentation are not registrable."  (Filing 21-9 at US0000084).  The bar on protection for typeface designs does not change based on whether the font or spacing is "standard."  Congress denied protection for all typeface designs when it chose not to include "design of typeface" as a type of protectable "pictorial, graphic, or sculptural work" under the Copyright Act.  H.R. REP. NO. 94-1476, at 55.  And the regulations unambiguously prohibit registration of "mere variations of typographic ornamentation, lettering, or coloring."  37 C.F.R. § 202.1(a).  The lack of a standard font or equal spacing, and the presence of "custom curves" in the lettering, (Filing 24 at 9), are not determinative.  *See* Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003) ("Thus the public domain includes, for

example, both the generic shape of the letter 'L' and all of the elaborately more specific 'L's'

from the hundreds of years of font designs that have fallen into the public domain.").

Additionally, as discussed above, Plaintiff's intention to create a "blurred impression indicating

speed" by presenting the letters on a slight slant and including points extending from the top-left

hand side of certain letters also does not establish that the lettering is copyrightable.  *See*

COMPENDIUM (THIRD) § 310.2.

     Plaintiff relies on a single case from the Eastern District of Pennsylvania from over sixty

years ago, prior to the enactment of the 1976 Copyright Act, for the proposition that the size,

spacing and arrangement of letters can be sufficiently creative to warrant copyright protection.

*See* Filing 24 at 14–15 (citing *Amplex Mfg. Co. v. A.B.C. Plastic Fabricators, Inc.*, 184 F. Supp.

285, 288 (E.D. Pa. 1960)).  This single case is inconsistent with the modern precedent that

typefont, lettering and typographic ornamentation are not generally registrable because they are

"mere variations of uncopyrightable letters or words, which in turn are the building blocks of

expression."  COMPENDIUM (THIRD) § 906.4; *see also Eltra Corp.*, 579 F.2d at 298 (finding the

Copyright Office properly refused to register a typeface design and noting, "typeface has never

been considered entitled to copyright"); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382,

389 (D. Del. 2020) (finding that a design composed of lettering "in a serif font with white text on

a colored background and . . . a curly 'S,' and a descending stroke of the 'R'" to be

unprotectable) (internal quotation marks omitted); *Beijing Zhongyi Zhongbiao Elec. Info. Tech.

v. Microsoft Corp.*, No. 4:12-CV-4077, 2013 U.S. Dist. LEXIS 101947, at *7 (W.D. Ark. July

22, 2013) ("Typeface designs are not copyrightable subject matter."); *PrimeSource, Inc. v. Pers.

Res., Inc.*, No. 97-CV-0400E(F), 1998 U.S. Dist. LEXIS 13150, at *12 (W.D.N.Y. Aug. 20,

1998) (holding that where the only elements in a logo that might sustain a copyright "are the

spacing of the letters and their precise shapes . . . the level of creativity inherent in such

elements is *de minimus* and trivial and is therefore insufficient, as a matter of law, to sustain a

copyright"); *Adobe Sys. v. S. Software, Inc.*, No. C 95-20710 RMW(PVT), 1998 U.S. Dist.

LEXIS 1941, at *11 (N.D. Cal. Feb. 2, 1998) (noting that "[t]ypeface designs are not

copyrightable") (citing *Eltra Corp.*, 579 F.2d at 298).

> **b.   The combination of elements in the Works is not copyrightable.**

Because the Works lack individually protectable copyrightable elements, each may only

be registered by the Office if the sum of its elements demonstrates more than *de minimis*

creativity. As the Office explained in its refusal, "a combination of unprotectable elements is

eligible for copyright protection only if those elements are numerous enough and their selection

and arrangement original enough that their combination constitutes an original work of

authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); *see also Atari Games Corp. v.

Oman*, 888 F.2d 878, 883 (D.C. Cir. 1989) (noting that "simple shapes, when selected or

combined in a distinctive manner indicating some ingenuity, have been accorded copyright

protection both by the Register and in court" while considering the copyrightability of an audio

visual work composed of multiple images). Not every combination or arrangement of common

or standard design elements will meet this test. *See Feist*, 499 U.S. at 358 (finding the Copyright

Act "implies that some 'ways' [of selecting, coordinating, or arranging uncopyrightable material]

will trigger copyright, but that others will not"). "Trivial elements of compilation and

arrangement, of course, are not copyrightable since they fall below the threshold of originality."

*United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978).

For example, the Office would register the below wrapping paper design consisting of

circles, triangles, and stars arranged in an unusual pattern with each element portrayed in a

different color "because it combines multiple types of geometric shapes in a variety of sizes and colors, culminating in a creative design that goes beyond the mere display of a few geometric shapes in a preordained or obvious arrangement." COMPENDIUM (THIRD) § 906.1.



In contrast, a simplistic arrangement of non-protectable elements does not demonstrate the level of creativity necessary to warrant protection. For example, the Eight Circuit affirmed a district court finding that it was not an abuse of discretion for the Office to refuse to register the below logo composed of "four angled lines which form an arrow and the word 'Arrows' in cursive script below the arrow." *John Muller & Co.*, 802 F.2d at 990.



Likewise, as the Board noted in its refusal, the Fourth Circuit upheld the Office's refusal to register a claim in a website design comprised of "the special combination of font and color selection; visual effects such as relief, shadowing, and shading; labeling; and call-outs" because the design lacked a minimum level of creativity. *Darden v. Peters*, 488 F.3d 277, 281, 287 (4th Cir. 2007); *see also* Filing 21-9 at US0000084. The Board's refusal details additional examples of works in which the combination of unprotectable elements failed to yield a modicum of creativity. *See* Filing 21-9 at US0000084.

27

Here, the Office correctly and reasonably concluded that the combination of elements in the Works is not sufficiently creative to warrant copyright protection.  As in the Eighth Circuit's decision in *John Muller & Co.*, affirming that the Office had not abused its discretion in refusing to register "Arrows," here the Works are composed of common geometric shapes and variations of the company name.  *See John Muller & Co.*, 802 F.2d at 990.  The Works contain only two solid colors, with no shading or gradient use.  Plaintiff's selection of two specific shades of yellow and purple is not copyrightable authorship.  *See* 37 C.F.R. § 202.1 ("[M]ere variations of . . . coloring" are not copyrightable); COMPENDIUM (THIRD) §§ 313.4(K) ("The Office cannot register a claim to copyright in color in and of itself or a system for matching pairs and sets of colors"), 906.3, 913.1 (mere use of different colors in a logo is not copyrightable); *see also Boisson v. Banian, Ltd.*, 273 F.3d 262, 271 (2d Cir. 2001) ("Color by itself is not subject to copyright protection").  Unlike the wrapping paper displayed above, the Works lack a variety of shapes, sizes and colors.  There is also nothing distinctive about the placement of the text in the center of the circle in the S Logo or to the left of the circle and in the center of the circle for the other two Works.  The placement of a business name on top of, or next to, a basic geometric shape does not render a design copyrightable.  *See* COMPENDIUM (THIRD) § 313.3(E) ("The general layout or format of . . . a form, or the like, is not copyrightable because it is a template of expression.").

The Office reasonably found that the combination of elements in the Works did not contain the requisite level of creativity to be protected by copyright.  In drawing this conclusion, the Board noted its reliance upon established principles of law, the Office's own regulations and *Compendium* guidance.  (*See* Filing 21-9 at US0000084 (citing *Feist*, 499 U.S. at 345; *Darden*, 488 F.3d at 277; *Purohit*, 2020 WL 1441614 at *4)).  Granting registrations for the Works would

28

impermissibly provide Plaintiff a monopoly in standard combinations of basic building blocks like geometric shapes, lines, lettering, and colors and allow Plaintiff to be able to prevent others from copying these basic elements in formations that are common in logos.

> **2.    The Copyright Office applied longstanding copyrightablilty standards and adequately explained its reasoning.**

The Copyright Office adhered to its long-established practices when it refused registration of Plaintiff's Works.  The Office's application of the legal standard for creativity was consistent with decades of documented Office policies and registration determinations.  While Plaintiff may disagree with the Office's conclusions, the Office properly applied the legal eligibility criteria for registration under the Copyright Act and articulated the basis for its determinations to Plaintiff on three separate occasions.  The Office provided a "satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (citation omitted).  Thus, the Office did not abuse its discretion in determining that the Works "lacked the level of creativity needed for copyrightability."  *See John Muller & Co.,* 802 F.2d at 990.

As the Board noted in refusing to register the Works, when reviewing an application for registration, the Office "does not compare works that have gone through the registration process."[7]  (Filing 21-9 at US0000085; *see also Coach, Inc.*, 386 F. Supp. at 499; COMPENDIUM (THIRD) § 309.3).  The Office examines each claim on its own merits by applying uniform standards of copyrightability, with the understanding that differences between any two works can lead to different result, even with the application of the same legal standards.  *See Homer Laughlin China Co.*, 1991 WL 154540, at *2 (stating that it was not aware of "any authority which provides that the Register must compare works when determining whether a submission is

---

[7] In contrast, courts may look to precedent in determining whether an agency action is arbitrary or capricious or an abuse of discretion.

29

copyrightable").  Since 1870, the Office has issued over thirty-eight million copyright

registrations.  *See* U.S. COPYRIGHT OFFICE, UNITED STATES COPYRIGHT OFFICE FISCAL 2019

ANNUAL REPORT 45 (2020), https://www.copyright.gov/reports/annual/2019/ar2019.pdf.  Thus,

it would not be administrable to run comparisons of new claims against the millions of

previously registered works in Copyright Office records.

 This Circuit recognized when affirming the Office's decision not to register a similarly

sparse logo, "[t]here is no simple way to draw the line between 'some creative authorship' and

not enough creative authorship, and there are no cases involving 'works' exactly like this one."

*John Muller & Co.,* 802 F.2d at 990; *see also Atari Games Corp.,* 888 F.2d at 887 (Silberman, J.,

concurring) (footnote omitted) (recognizing "unavoidably subjective aspects" of determining the

level of creativity in a work).  For that reason, a "decision to register a particular work has no

precedential value and is not binding upon the Office when it examines any other application."

COMPENDIUM (THIRD) § 309.3.

 The Office applies the same standards of creativity when examining copyright

applications for business logos that it applies for all other visual artwork.  Section 202.10

recognizes that a work that is eligible for trademark protection, like a logo, may also be eligible

for copyright protection if it contains the requisite qualifications for copyright.  *See* 37 C.F.R.

§ 202.10(b).  The vast majority of business logos, like other works, are registered by the Office,

because they are sufficiently creative.  But, applying the standards articulated above, the Office

consistently refuses registration for logos, like Plaintiff's Works, that consist only of

"[w]ording," "[m]ere scripting or lettering, either with or without uncopyrightable

ornamentation," common "spatial placement" of elements, and the "[u]ncopyrightable [and

mere] use of color, frames, borders or differently sized font."  COMPENDIUM (THIRD) § 913.1.

Generally, the Office has determined that logos comprised of a basic combination of common geometric shapes and a business name do not contain the necessary creative authorship to sustain a claim to copyright.  Far from singling out Plaintiff's Works, in recent years, the Board has at least twice declined to register other similar logos consisting of business names displayed against circular backdrops:



For example, the Office refused registration for the "P-Tech USA Original Logo," finding that the work "consist[ed] of little more than three concentric red circles behind two lines of text in red and blue," with USA "rotated 90 degrees."  *Registration Decision Regarding P-Tech USA Original Logo*, Correspondence IDs 1-2XI91E9, 1-3BDVSKI; SR No. 1-6354549371 at 5 (Sept. 9, 2019), https://copyright.gov/rulings-filings/review-board/docs/p-tech.pdf.  Similar to Plaintiff's arguments here, the applicant unsuccessfully argued that the stylization of the circle shapes were the result of the "graphic designer's 'diligent effort' to express a 'target theme' by creating the work 'from scratch.'"  *Id.*  The Office also denied registration for "Derrick Logo" because the combination of the words, the ® symbol, and the fading oval, which the Office found to be uncopyrightable "regardless of color," lacked sufficient creativity to warrant registration.  *Registration Decision Regarding Derrick Logo, Derrick Corp Dual Pool Artwork, Derrick Corp Hyperpool Artwork, FLC 500*, SR Nos. 1-1832471301, 1-1832697908, 1-1832697908, and 1-1806478999 at 5 (Sept. 8, 2016), https://copyright.gov/rulings-filings/review-board/docs/derrick-logo.pdf.

31

The Office employed the same legal standard for creativity to examine and ultimately refuse registration for Plaintiff's Works.  Like the two logos above, Plaintiff's Works consist of very few geometric shapes oriented to frame Plaintiff's business name (or the letter "S").  The common geometric shapes, the solid coloring of the geometric shapes, and the font do not demonstrate creative authorship.  Indeed, Plaintiff's Works arguably demonstrate even less creative authorship because they lack the gradient coloring featured in the "Derrick Logo." Further, like the layout of "P-Tech USA Original Logo" and "Derrick Logo," the arrangement of the elements in "Speedway Motors" and "Team Speedway Motors," with text flowing from the center to the side of the circular shape, also constitutes a garden-variety format that is typical for logo designs.  (*See* Filing 21-9 at US0000079-85).  Thus, the Register's decision to deny registration for the Works accorded with the Office's longstanding interpretation of the Copyright Act's eligibility requirements and with registration determinations for similar works. *See id.*

> **3. While the Office does not compare works, the registrations cited in Plaintiff's Brief demonstrate that the Office applies a consistent legal standard.**

The examples Plaintiff raises of logos previously registered by the Office demonstrate that the Office consistently applies the legal standard for creativity as implemented through its registration practices.[8]  (*See* Filing 24 at 22–25).

---

[8] To the extent Plaintiff has suggested the Office unreasonably refuses to register logos, Filing 23 at 12–13, these examples demonstrate that the Office in fact often registers logos.



The first three designs shown above, "American Airlines Flight Symbol," "D with Ball Design (Detroit Pistons)," and "LAKELAND MAGIC Secondary Logo" each contain pictorial elements that each display more creativity than the simplistic placement of a letter or name atop a stylized a circle: (1) "one blue and red element conforming to the contours of an aircraft tail and one white and gray triangular element" illustrating " the head of an eagle [] with multiple variations in shading," *Registration Decision Regarding American Airlines Flight Symbol*, Correspondence ID 1-28H4ZFK; SR No. 1-3537494381 at 5 (Dec. 7, 2018), https://copyright.gov/rulings-filings/review-board/docs/american-airlines.pdf; (2) a basketball with stylized blue and gray shading "pass[ing] through the letter 'D,' [] emphasized by [a] wedge shape to the left of the basketball" that also features stylized shading; and (3) a basketball with stylized white, blue, and gray shading to add "three-dimensionality to the artwork" with "a double border in black and white that incorporates numerous star designs" in an "arrangement that is not common or intuitive," *Registration Decision Regarding D with Ball Design (Detroit Pistons), LAKELAND MAGIC Secondary Logo, SA with Ball Design (San Antonio Spurs)*, Correspondence IDs 1-32FSIYR, 1-32FSIZX, and 1-32G0BQX; SR Nos. 1- 4814315971, 1-4632160517, and 1-4814316090 at 6, 7 (May 30, 2019), https://copyright.gov/rulings-filings/review-board/docs/d-with-ball-design.pdf.

33

Such pictorial elements are absent from Plaintiff's Works.  Indeed, the Office expressly

considered three of these logos when raised by Plaintiff in its Second Request for

Reconsideration and distinguished them, stating:

> [E]ach of the works in the cited letters exhibits more creativity than the Works.
> The Board noted in the previous cases the creative use of white space, shading,
> and gradient colors in the American Airlines logo; the combination of various
> geometric shapes, numerous colors, and stylized shading as well as the interaction
> of elements illustrating movement in the Detroit Pistons logos; and the four colors
> and shading that adds three-dimensionality to the Lakeland Magic logo. These
> creative compilations are quite different from the Works, which use only two
> colors without shading or use of whitespace, two circular shapes, and either a
> single letter or two to three words. Brand Innovation's assertion that the Works
> convey a 3D impression of speed is what it hopes to inspire in the viewer, but it is
> not visually perceptible in the Works.

(Filing 21-9 at US0000085).

The remaining logos Plaintiff highlights in its Brief are also distinguishable from

Plaintiff's Works.  (*See* Filing 24 at 23).  For example, "Northwind Logos with Boat," depicted

above, included "two curved triangle shapes side-by-side, placed above a curved polygon shape

to create the overall shape of a sailboat, with an eight-point star placed in the middle of the right

sail that curves to match the outside curved angle of the sail it is placed within."  *Registration*

*Decision Regarding Northwind logos with boat*, Correspondence ID 1-3MIT68F; SR No. 1-

6278787931 at 2 (Oct. 9, 2020), https://copyright.gov/rulings-filings/review-

board/docs/northwind-logo.pdf.  The Board found that the combination of those modified shapes

and elements created "a protectable graphic display of a sail boat."  *Id.* at 2.  Each of the

remaining registered works Plaintiff highlights combines an abstraction of shapes and gradient

shading or color blocking that depict dimension in a creative manner.[9]  The stylized three-

---

[9] Detailed Board letters providing careful reasoning regarding each of the registration
decisions Plaintiff highlights can be found on the Office's website at
https://copyright.gov/rulings-filings/review-board/.

dimensional shading in conjunction with the arrangement of multiple shapes demonstrate the modicum of creativity required for copyrightability.  The Works here, in contrast, are comprised of flat, two-dimensional coloring, unprotectable short phrases, and two basic variants of a geometric circle arranged in layouts that are common for logo designs.

Plaintiff's effort to compare the Works to previously registered works does not demonstrate a lack of consistency or substantiate its claim that the Office abused its discretion in refusing registration for the Works.  As mentioned above, the Office does not base copyrightability determinations on comparisons of works.  *See* COMPENDIUM (THIRD) § 602.4(D).  Instead, it applies the same legal standard established by the law and by the courts to each new claim it receives to determine registrability.  In this case, however, Plaintiff's comparison to previously registered works further reinforces the conclusion that the Office's determination was rational and duly based on application of the law pursuant to its established practices.

## VI.  PLAINTIFF'S REQUESTED RELIEF IS OUTSIDE THE SCOPE OF THE APA

Plaintiff's requested relief is for the Court to "reverse the Copyright Office's decisions and enter an order compelling issuance of registrations on the subject applications."  (Filing 24 at 25).  Such relief, however, is outside the scope of the APA.  *See Coach*, 386 F. Supp. 2d at 498 ("plaintiffs have cited no authority, and the Court is aware of none, that would allow this Court, on review under the APA, to order [the Copyright Office] to register the works.") (citing *Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C. Cir. 1992) (remanding to "the district court with instructions to again return the matter of Atari's application to the Register for renewed consideration")).

In its Brief, Plaintiff cites to 5 U.S.C. § 706(1) and states that the Court "may order the issuance of certificates" because it may "compel agency action unlawfully withheld or unreasonably delayed." (Filing 24 at 26). Plaintiff states that the "issuance of a registration certificate is a mandatory, discrete action," and "[r]elief under § 706(1) is available when 'an agency failed to take a discrete agency action that it is required to take.'" *Id.* (citing *Org. for Competitive Mkts. v. United States Dep't of Agric.*, 912 F.3d 455, 462 (8th Cir. 2018)).

This claim is erroneous however, because, as Justice Scalia stated in *Norton v. S. Utah Wilderness Alliance*, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (citing ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 108 (1947)). As detailed above, the refusal to register the Works, the agency action at issue, is a discretionary act and was lawfully done, in accordance with Copyright Office policies and procedures. And, even if the Court were to find that the Office abused its discretion, which it did not, the remedy would not be an order compelling registration, but rather "renewed consideration" of the copyrightability of the Works. *Atari Games Corp.*, 979 F.2d at 247.

**CONCLUSION**

The Administrative Record, (Filing 21), shows that the Office's refusal to register the Works was soundly and rationally based on settled law, and not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. For the reasons stated above, Defendant respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment.

36

SHIRA PERLMUTTER,
Register of Copyrights, Defendant

JAN W. SHARP
Acting United States Attorney
District of Nebraska

By:    s/ Lynnett M. Wagner
        LYNNETT M. WAGNER, #21606
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE  68102-1506
        Tel:  (402) 661-3700
        Fax:  (402) 661-3081
        E-mail: lynnett.m.wagner@usdoj.gov

BRIAN BOYNTON
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:                    /s/ Jenna Munnelly
PHILIP CHARLES STERNHELL    JENNA MUNNELLY
Assistant Director              Trial Attorney
                              U.S. Dept. of Justice
                              Washington, DC 20530
                              Tel: (202)616-1061
                              Fax: (202)307-0345
                              E-mail:  jenna.e.munnelly@usdoj.gov

REGAN A. SMITH
General Counsel and
Associate Register of Copyrights

JORDANA S. RUBEL
Assistant General Counsel

JALYCE E. MANGUM
Attorney Advisor

U.S. COPYRIGHT OFFICE

Dated:  March 8, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify this brief complies with the requirements of NECivR 7.1(d)(1).  Relying on the word-count function of Microsoft Word for Office 365 MSO, this document contains 11,340 words.  The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

s/  Lynnett M. Wagner
Assistant United States Attorney

38