IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SPEEDWAY MOTORS, INC.,

                    Plaintiff,

vs.

SHIRA PERLMUTTER, in her official
capacity as Register of Copyrights,

                    Defendant.

4:20-CV-3089

MEMORANDUM AND ORDER

This dispute arises from the United States Copyright Office's denial of Speedway Motors, Inc.'s copyright applications for three new corporate logos. Filing 1 at 1. Speedway alleges the Copyright Office acted arbitrarily and capriciously in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 and requests that the Court reverse the Copyright Office's decisions. Filing 1 at 9-11.

This matter is now before the Court on the parties' cross-motions for summary judgment. Speedway asserts its logos are sufficiently creative as a matter of law to qualify for copyright protection under 17 U.S.C. § 102(a). Filing 22. The Register of Copyrights, maintains the logos are not sufficiently creative and argues that the Copyright Office did not act arbitrarily and capriciously. Filing 25. The Court agrees with the Register of Copyrights, so Speedway's motion will be denied and the Register of Copyright's motion will be granted.

## I. BACKGROUND

Speedway is a Nebraska corporation that "markets goods in the performance vehicle field, including parts for race cars, hot rods, and vintage

cars." Filing 1 at 2-3. In 2018, Speedway hired a marketing firm to create new logos "that symbolized the racing and performance automotive industries while still referencing classic features of the Speedway Motors brand." Filing 1 at 3. The result was the following three new logo designs.

First, the "Speedway Motors Logo" which Speedway claims "features multiple elements which are the result of deliberate creation, selection, and arrangement" including "highly stylized" font, and "the tail of the 'y' extending into a complex, asymmetric dark purple line art." Filing 1 at 3-4.



Second, the "S Logo" featuring a "highly stylized 'S' shape" and "multi-featured asymmetric dark purple line art shape" resulting in a "unique, non-



typical, stylistic" logo creating "a striking impression." Filing 1 at 4.

Third, the "Team Speedway Motors Logo" with "many of the same features" as the Speedway Motors Logo and the addition of the word "Team" in a "different stylized form from the other words." Filing 1 at 4.



On October 4, 2018 Speedway filed three applications with the Copyright Office to register each of the above logos. Filing 1 at 6. The applications were denied on November 29, 2018 because, according to the Copyright Office, the logos "lack[ed] the authorship necessary to support a copyright claim." Filing 1 at 6; filing 21-5 at 1; filing 21-13 at 1; filing 21-21 at 1. Specifically, the Copyright Office said that protection may not extend to "familiar symbols or designs; basic geometric shapes; words and short phrases such as names, titles, and slogans; or mere variations of typographic ornamentation, lettering or coloring." See Filing 21-5 at 1.[1]

On February 11, 2019 Speedway made requests for reconsideration on each application, citing the "extremely low level of creativity required to constitute a 'work of authorship'" under federal law, and arguing the logos clearly contained that "'minimal degree' of requisite creativity." Filing 1 at 6. In support of its request, Speedway pointed to another corporate logo that had received copyright protection. See filing 21-6 at 5. And Speedway described in detail the artistic process of the marketing firm that designed the logos,

---

[1] It's important to note that this is a copyright claim, and not a trademark claim—usually, logos like Speedway's are intended for use as marks indicating the origin of goods or services and are protected by the Lanham Act, as opposed to the originality or creativity that the copyright laws are designed to protect. See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37 (2003).

including the inspiration for the colors, shapes, and font. *See* filing 21-6 at 6-9.

The requests were again denied by the Copyright office, which explained:

> The circles are a common and familiar shape, while the remaining element is a [business name or single letter]. As we stated in our initial correspondence, common and familiar shapes, or any minor variation thereof, are not copyrightable. . . . The same is true for words. . . . That the [letter or letters are] slightly stylized in font and placement does not transform [them] into copyrightable works of art—[they] remain non-copyrightable letters [and in two instances form] a non-copyrightable name.
>
> . . .
>
> Combining a business name with [or centering a letter within] a geometric shape is an age-old, common logo configuration. That the shape corresponds with the nature of the business is also an obvious logo configuration. The arrangement of these few elements into an obvious, expected configuration lacks the necessary creativity required to support a claim in copyright.

Filing 21-7 at 3; filing 21-15 at 3; filing 21-23 at 3.

The Copyright Office also refused to consider "author's choices, inspiration or any intended meaning or significance that those features may be intended to evoke," and rather focused solely on "the actual appearance of the work[s]" and "how the work[s] [are] perceived." Filing 21-7 at 3; filing 21-15 at 3; filing 21-23 at 3. And the Copyright Office declined to "compare works that have been previously registered or refused registration" to Speedway's logos in evaluating Speedway's applications for copyright. Filing 21-7 at 3-4; filing 21-15 at 3-4; filing 21-23 at 3-4.

According to the Copyright Office, Speedway's new logos fell "into a narrow area where admittedly independent efforts are deemed too trivial or insignificant to support a copyright" and therefore failed to meet the admittedly low threshold for copyright protection. Filing 21-7 at 4; filing 21-15 at 4; filing 21-23 at 4.

On September 18, 2019 Speedway made second requests for reconsideration on each of its three logos. Filing 1 at 7; *see* filing 21-8; filing 21-16; filing 21-24. In those requests, Speedway again referenced other corporate logos that had received copyright protection and explained in further detail the deliberate choices for the shapes, text and colors used in its logos. *See* filing 21-8 at 6-12. It argued that the "purple line art" in each of the logos was not a circle at all, suggesting that it was "deliberately transformed" with notches, tapering, and a gap to "provide a 3D impression with an appearance of a rolling motion and acceleration, symbolic of speed, racing and the performance car industry" that also implied the "shape of auto parts such as [] gauges, steering wheels, vehicle wheels, headlamps, [and] racetracks." *See* filing 21-8 at 9-10. And Speedway made similar arguments concerning the stylized font intended to indicate speed, as well as the chosen colors intended to evoke feelings of nostalgia. *See* filing 21-8 at 10-11. Finally, Speedway argued that, while the independent shape, color or font choices may not be copyrightable, when viewed as a whole the logos were sufficiently creative and not "inevitable" or "so common as to be a matter of course." *See* filing 21-8 at 12-15.

The Review Board of the United States Copyright Office considered Speedway's second requests, and affirmed the Copyright Office's denial of registration. *See* filing 21-25 at 1. The Board reiterated that the author's inspiration and intent were irrelevant to a copyright determination. Filing 21-25 at 5-6. And the Board explained that typeface and lettering are not

generally registrable and that the minimal flair added to the lettering in Speedway's logos did not "add sufficient creativity to warrant registration." Filing 21-25 at 6. The Board also rejected Speedway's arguments that its "deliberately selected stylized color shades" of purple and yellow warranted copyright protection. Filing 21-25 at 5-6. Finally, the Board confirmed the Copyright Office's practice of not comparing works. Filing 21-25 at 7. But it also explained that the corporate logos that had been approved "exhibit[ed] more creativity" than Speedway's logos. Filing 21-25 at 7. The Office also said that despite Speedway's assertions that its logos conveyed a 3D impression of speed, it was simply "not visually perceptible in the [logos]." Filing 21-25 at 7.

Ultimately, the Board concluded that Speedway's logos, viewed as a whole, were insufficiently creative and consisted only of "'wording' 'mere scripting or lettering, either with or without uncopyrightable ornamentation,' 'spatial placement' of elements, and the 'uncopyrightable and mere use of color, frames, borders or differently sized font.'" Filing 21-25 at 7. The Board's letter constituted final agency action. Filing 21-25 at 7.

## II.   STANDARD OF REVIEW

Judicial review of an administrative decision is governed by the Administrative Procedure Act. 5 U.S.C. § 706. This Court's review is limited, and may only set aside an agency decision that is arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law. *Voyageurs Nat. Park Ass'n v. Norton,* 381 F.3d 759, 763 (8th Cir. 2004). An agency's decision is accorded a high degree of deference. *Id.* An agency decision supportable on any rational basis must be upheld. *Id.* This is especially true when an agency is acting within its own sphere of expertise. *Friends of Boundary Waters Wilderness v. Dombeck,* 164 F.3d 1115, 1128 (8th Cir. 1999). A decision is arbitrary and capricious if the agency decision relies on factors Congress has

not intended it to consider, entirely fails to consider important aspects of the problem, offers an explanation for its decision that is counter to the evidence, or is so implausible that it could not be considered a difference of view or the product of an agency's expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015).

## III. DISCUSSION

The Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device," including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a); *see West Publ'g Co. v. Mead Data Cent. Inc.*, 799 F.2d 1219, 1223 (8th Cir. 1986). Originality is a constitutional requirement and represents the "*sine qua non,*" "touchstone," and "bedrock principle" of copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345-47 (1991). Originality has two components: (1) independent creation by the author (as opposed to being copied from other works) and (2) at least some minimal degree of creativity. *Id.* at 345; *see West Publ'g Co.*, 799 F.2d at 1223. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. *Feist*, 499 U.S. at 345; *see West Publ'g Co.*, 799 F.2d at 1223. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. *Feist*, 499 U.S. at 345; *West Publ'g Co.*, 799 F.2d at 1223.

Congress has repeatedly refused to grant copyright protection to typeface. *Eltra Corp. v. Ringer*, 579 F.2d 294, 298 (4th Cir. 1978). And "since at least 1899" it has been the practice of the Copyright Office to deny registration to "words and phrases." *Southco, Inc. v. Kanebridge Corp.*, 390

F.3d 276, 285 (3d Cir. 2004). In 1958, the Copyright Office published a circular which stated "brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." *Id.*

In 1959, the Copyright Office codified its practice in federal regulation, *see* Material Not Subject to Copyright, 24 Fed. Reg. 4955-4956 (June 18, 1959), and the same regulations largely remain in effect today:

> The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:
>
> (a) Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; . . . .

37 C.F.R. § 202.1.

> (a) In order to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form. The registrability of such a work is not affected by the intention of the author as to the use of the work . . . .
>
> (b) A claim to copyright cannot be registered in a print or label consisting solely of trademark subject matter and lacking copyrightable matter. While the Copyright Office will not investigate whether the matter has been or can be registered at the Patent and Trademark Office, it will register a properly filed copyright claim in a print or label that contains the requisite

qualifications for copyright even though there is a trademark on it. However, registration of a claim to copyright does not give the claimant rights available by trademark registrations at the Patent and Trademark Office.

37 C.F.R. § 202.10.

But the selection and arrangement of elements that, in themselves, may not qualify for copyright protection can entail the minimal degree of creativity required to bring the work within the protection of copyright laws. *Atari Games Corp. v. Oman*, 979 F.2d 242, 245 (D.C. Cir. 1992). Only those choices and arrangements that are "'mechanical,' 'garden variety,' 'typical', and 'obvious' [or follow] 'an age-old practice, firmly rooted in tradition', one 'so commonplace that it has come to be expected as a matter of course,' or 'practically inevitable'" should be denied protection. *Id.* (quoting *Feist*, 499 U.S. at 362-63). The Eighth Circuit has cautioned "there is no simple way to draw the line between 'some creative authorship' and not enough creative authorship," for pictorial, graphic and sculptural works under section 202.10, particularly where there are no cases involving a work precisely like the one at issue. *John Muller & Co.*, 802 F.2d at 990.

Finally, the methods, purposes, and reasons for an author's decisions are irrelevant when determining whether the requisite level of creativity is present. *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1015 (2017); *see* 37 C.F.R. § 202.10(a). The Copyright Office's inquiry is limited to how the work is perceived, not how or why it was designed. *Star Athletica*, 137 S. Ct. at 1015; 17 U.S.C. § 102(a).

Speedway argues that the Copyright Office's denials of its applications for copyright were arbitrary, capricious, and not in accordance with law. Filing

24 at 3. The parties agree that each of the logos are original—in other words, independently created and not copied. *See* filing 24 at 9; filing 21-7 at 1. But the parties disagree about the logos' degree of creativity. Speedway asserts that the Copyright Office erred in determining the three logos were not sufficiently creative to qualify for copyright protection. Filing 24 at 3. In particular, Speedway argues the logos include "a combination or multiple creative elements that go well beyond common geometric shapes and stock lettering," and therefore exceed the minimal degree of creativity required. Filing 24 at 3.

The Copyright Office asserts that it provided a "satisfactory explanation and rational basis" for its refusal to register the logos. Filing 26 at 18. And it argues that Speedway's "disagreement with the Office's conclusion does not establish an abuse of discretion, nor does it indicate that the Office acted arbitrarily or capriciously." Filing 26 at 18. The Court agrees.

Here, Speedway spends considerable time dissecting each element of its logos and describing the graphic design firm's inspiration and intended effect. *See* filing 24 at 13-16. And the Court does not doubt that the circle line art in the logos was intended to give the impression of "a rolling motion and acceleration," or that the text was designed to have "speed lines." *See* filing 24 at 14-15. But Speedway does not dispute that consideration of an author's inspiration and intended effects is improper because the question of whether a work is subject to copyright turns on how a work is *perceived*. *See Star Athletica*, 137 S. Ct. at 1015; 17 U.S.C. § 102; 37 C.F.R. § 202.10(a).

Speedway also contests the Copyright Office's characterization of the logos' individual elements as "circles, a single letter, and short phrases," *see* filing 21-9 at 5, filing 24 at 14-15. The Court, however, is not persuaded that the Office's characterization is an abuse of discretion. The Office examined the

logos, considered Speedway's arguments in favor of copyright, and articulated its reasons for concluding (1) the "stylized purple band" was still, in essence, a circle, and (2) the text, though "artistically rendered," was still typeface. *See* filing 21-9 at 5-6. And Speedway doesn't disagree that familiar shapes and typeface are generally not copyrightable. 37 C.F.R. 202.1(a); *see* filing 24 at 13-15.

Even if its logos' individual elements are not sufficiently creative, Speedway asserts that the selection and arrangement of those elements satisfies the minimal degree of creativity necessary to grant copyright protection. Filing 24 at 15-16. But again, the Court cannot say that the Copyright Office abused its discretion and acted arbitrarily or capriciously when it concluded otherwise.

The Office considered Speedway's arguments that the stylized purple band, the artistically rendered text, and the deliberately selected shades of yellow and purple combined to create a finished product that was sufficiently creative. *See* filing 21-9 at 5-6. It then concluded:

> Looking at each [logo] as a whole, only two solid colors are used, and there is no shading or gradient use of colors. Although the purple band within the yellow circle is stylized and has different widths, it is still essentially a circle band within a larger circle that follows the outline of the larger circle. Placing a business name on top of a geometric shame is a "garden variety" logo configuration that is not entitled to copyright protection.

Filing 21-9 at 6. The Court considers that a satisfactory explanation. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Atari Games Corp.*, 979 F.2d at 245. In other words, it's an explanation that includes a rational connection between

the facts found—that the logos consist of individual elements that are not subject to copyright and that the arrangement of those elements as a whole is also insufficiently creative to justify copyright—and the choice made to deny Speedway's applications. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Finally, Speedway argues that the Copyright Office's decision in this case is inconsistent with the Office's prior decisions granting protection to corporate logos, and was therefore arbitrary and capricious. *See* filing 24 at 22-26. The Court disagrees.

The Copyright Office repeatedly explained that it does not compare works. *See* filing 21-7 at 3, filing 21-9 at 7 (both citing U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 309.3 (3d ed. 2017). And even if the Office did compare works, it provided a rational basis and satisfactory explanation for why the logos it had previously approved were more creative than Speedway's logos.[2] *See* filing 21-9 at 7. Specifically, the Office explained that the use of white space, shading, and gradient colors provided the illusion of movement or three-dimensionality to the logos not found in Speedway's submissions. Filing 21-9 at 7. There is no simple way to draw the line between some creative authorship and not enough creative authorship, particularly where there are no logos precisely like Speedway's. *See John Muller & Co.*, 802 F.2d at 990.

---

[2] The Court further notes that this is not a race to the bottom. Even if the Copyright Office had previously approved an application for copyright for a work that arguably displayed less creativity than Speedway's logos, that does not mean that Speedway has satisfied its legal burden. The Copyright Office has undoubtedly, over its 150-year-long existence, approved applications for works that do not satisfy the creativity requirement. That does *not* mean that the Copyright Office's denial of Speedway's applications were an abuse of discretion or otherwise not in accordance with law.

The Court finds that the Copyright Office's reasoning is not counter to the evidence or so implausible that it could not be considered a difference of view or the product of an agency's expertise. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *McClung*, 788 F.3d at 828. So, the Copyright Office's decision to deny Speedway's applications for copyright protection despite its prior approval of protection for other logos was not arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Accordingly,

IT IS ORDERED:

1.  Speedway's motion for summary judgment (filing 22) is denied.

2.  The Register of Copyright's motion for summary judgment (filing 25) is granted.

3.  The Register of Copyright's decision is affirmed.

4.  A separate judgment will be entered.

Dated this 10th day of August, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge